WALTER LEE RAMSEY, JR., EMPLOYEE, PLAINTIFF v. SOUTHERN INDUSTRIAL CONSTRUCTORS INCORPORATED, EMPLOYER, RELIANCE INSURANCE COMPANY, CARRIER, AND GALLAGHER BASSET SERVICES, INCORPORATED, THIRD-PARTY ADMINISTRATOR, DEFENDANTS

No. COA04-1639

(Filed 20 June 2006)

## 1. Workers' Compensation— traveling employee rule— employee attacked at motel

An electrician was a traveling employee for workers' compensation purposes when he was beaten and robbed at the Richmond, Virginia motel at which he was staying while on a job. The traveling employee rule should not be confused with the coming and going rule.

**2. Workers' Compensation— employee attacked at motel— injuries arising from employment**

A workers' compensation plaintiff suffered injuries arising out of his employment where he was attacked in the motel at which he was staying while he worked out-of-town. The risk to which plaintiff was exposed was not something to which he would have been equally exposed apart from his employment-required travel.

**3. Workers' Compensation— total disability—inability to work—not proven**

The Industrial Commission did not err by concluding that a workers' compensation plaintiff had not met his burden of proving total disability where there was no presumption from a prior award or agreement, no medical evidence that plaintiff was unable to work at any employment, and the receipt of Social Security disability benefits is not alone sufficient to establish that it would be futile to seek alternative employment.

**4. Workers' Compensation— disability ended—not based on maximum medical improvement**

The Industrial Commission ended plaintiff's disability because he had not proven continuing total disability, not because he had reached maximum medical improvement.

Appeal by plaintiff and defendants from opinion and award filed 1 September 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 August 2005.

*Kellum Law Firm, by Douglas B. Johnson, for plaintiff.*

*Cranfill, Sumner & Hartzog, L.L.P., by W. Scott Fuller and Meredith T. Black, for defendants.*

*Lewis & Roberts, PLLC, by Richard M. Lewis, Winston L. Page, Jr. and Jeffrey A. Misenheimer, for North Carolina Associated Industries, amicus curiae.*

GEER, Judge.

Both plaintiff and defendants have appealed from an opinion and award of the Industrial Commission granting plaintiff temporary total disability compensation under N.C. Gen. Stat. § 97-29 (2005) for the period from 18 July 2000 through 5 April 2001 and compensation for

RAMSEY v. SOUTHERN INDUS. CONSTRUCTORS, INC.

[178 N.C. App. 25 (2006)]

partial permanent disability under N.C. Gen. Stat. § 97-31 (2005). Plaintiff Walter Lee Ramsey, Jr. was assaulted while staying at a motel in Richmond, Virginia in order to work for defendant Southern Industrial Constructors, Incorporated ("Southern") on a project in Petersburg, Virginia. The issue on appeal is whether the Industrial Commission erred in determining that this assault arose out of and in the course of plaintiff's employment with Southern. We hold that it did not err. We further hold, with respect to plaintiff's appeal, that the record contains competent evidence to support the Commission's conclusion that plaintiff failed to meet his burden of proving continuing total disability. Accordingly, we affirm the Commission's opinion and award.

## Facts

At the time of the hearing in the Industrial Commission, plaintiff was 58 years old. He had graduated from high school and had taken some college courses at Campbell University. Although plaintiff suffered from a speech impediment and had substantial limitation of motion in his left shoulder due to a congenital condition, he had been able to work for 20 years as a surveyor and for approximately 12 years as an electrician.

For about one and a half years, plaintiff worked as a journeyman electrician on projects for Southern. Southern's home office was located in Raleigh, North Carolina, but the company sent plaintiff—who lived in Kinston, North Carolina—to various sites, including Columbia, South Carolina; Little Rock, Arkansas; Durham, North Carolina; and Petersburg, Virginia. The length of plaintiff's assignments at these job sites varied from weeks to months. Sometimes, plaintiff was laid off after completing a particular assignment, only to be rehired a short time later to work at another Southern job site. Plaintiff typically received a $25.00 per day per diem while working at the various job sites.

In early July 2000, Ken Parker, the Southern supervisor for a project in Petersburg, Virginia, asked his project manager in Raleigh for additional workers. At this time, plaintiff was working for Southern at a job site in Durham, North Carolina. On 10 July 2000, shortly before plaintiff was scheduled to be laid off from the Durham project, plaintiff's supervisor, Charlie Sanders, informed him that he was needed at the Petersburg job site, starting that Thursday.

Plaintiff worked in Durham through Wednesday, 12 July 2000, and reported for work at the site in Petersburg, a steel mill, on Thursday,

13 July 2000. He worked for two days while the plant was shut down. During this time, he received a per diem and stayed at the Flagship Inn in Richmond. Although plaintiff's assignment was supposed to last only through Friday, 14 July 2000, Parker offered plaintiff a position for at least the following week, beginning on Monday, 17 July 2000, because a regular maintenance employee had quit. Plaintiff accepted the second job, but told Parker that he would be late in arriving from his home in Kinston on Monday because he needed to renew his driver's license. While plaintiff had been receiving a more substantial per diem for the two-day job, Parker informed plaintiff that he would only receive a $25.00 per day per diem for the maintenance job.

Plaintiff drove home to Kinston for the weekend and returned to work in Petersburg on Monday at 1:00 p.m. At 5:30 p.m., plaintiff left work for the day and went back to the Flagship Inn for lodging. Because plaintiff had not worked a full eight hours on Monday, he did not receive his per diem and was, therefore, required to pay for the entire cost of the motel room on his own.

Plaintiff ate his dinner in his motel room, but at approximately 11:30 p.m., he left his room to get ice to make his lunch for the next day. He was attacked by several assailants, who beat him, knocked him unconscious, and robbed him of $81.00. An ambulance took plaintiff to the hospital. Plaintiff suffered abrasions and lacerations to his face, contusions under his eyes, a left eye subconjunctival hemorrhage, and a depressed right orbital floor fracture in his right shoulder. In addition, two of plaintiff's front teeth were knocked out.

After being released from the hospital two days later, on 19 July 2000, plaintiff returned home to Kinston, where he continued to have problems with his right shoulder and consulted with various doctors. Plaintiff was ultimately sent by the North Carolina Department of Vocational Rehabilitation to Dr. Lamont Wooten, an orthopedic surgeon. Dr. Wooten recommended surgery after an MRI revealed a large retracted rotator cuff tear as well as dislocation of the biceps tendon. On 13 September 2000, Dr. Wooten repaired a "massive" rotator cuff tear that included a medial dislocation of the biceps tendon. Following the operation, plaintiff was treated with medication, range of motion exercises, and physical therapy. Dr. Wooten released plaintiff from his care and to return to work on 5 April 2001.

At that time, plaintiff was still experiencing problems with overhead reaching and nighttime pain. Dr. Wooten believed that plaintiff

RAMSEY v. SOUTHERN INDUS. CONSTRUCTORS, INC.

[178 N.C. App. 25 (2006)]

would always have trouble with overhead activities due to the damage to the rotator cuff, and he expressed the opinion that plaintiff's limitations would likely prevent him from being able to perform the ordinary duties of an electrician. Subsequent to being released by Dr. Wooten, plaintiff did not attempt to return to work with Southern or look for work anywhere else.

Defendants denied that plaintiff had suffered an injury by accident. A hearing was conducted before the deputy commissioner, who, on 11 September 2003, entered an opinion and award, concluding that plaintiff was a "traveling employee" and that, as a result of the assault, plaintiff had sustained an injury by accident arising out of and in the course of his employment with defendant Southern. The deputy commissioner further determined that plaintiff had failed to prove actual disability after 5 April 2001 under N.C. Gen. Stat. §§ 97-29 or 97-30 (2005). Although the deputy concluded that plaintiff was entitled to permanent partial disability benefits under N.C. Gen. Stat. § 97-31, she made no award "at this time" because of the state of the evidence.

Both plaintiff and defendants appealed to the Full Commission. On appeal, the Commission, with Commissioner Sellers dissenting, "affirm[ed] with minor modifications the Opinion and Award of the Deputy Commissioner." The Full Commission agreed with the deputy commissioner that plaintiff was entitled to temporary total disability compensation for the period of 18 July 2000 through 5 April 2001 and that plaintiff had failed to establish that he was incapable of earning wages in any employment after 5 April 2001. The Commission awarded permanent partial disability benefits in the amount of $588.00 per week for 60 weeks, but made no award at that time for plaintiff's loss of teeth because plaintiff had not adequately addressed that issue. Both plaintiff and defendants timely appealed to this Court.

## Standard of Review

Our review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. review*

*denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). This Court reviews the Commission's conclusions of law *de novo*. *Deseth v. LensCrafters, Inc.*, 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

### Defendants' Appeal

An injury is compensable under the Workers' Compensation Act only if the injury (1) is an "accident" and (2) "aris[es] out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (2005). The requirement that the accident "aris[e] out of" the employment is separate from the requirement that the accident occur "in the course of" the employment, and an employee has the burden of proving both requirements. *Hoyle v. Isenhour Brick & Tile Co.*, 306 N.C. 248, 251, 293 S.E.2d 196, 198 (1982). On appeal, defendants contend that plaintiff failed to do so.

"As used in the [Workers' Compensation] Act the phrase, 'in the course of the employment,' refers to the time, place, and circumstances under which an accidental injury occurs; 'arising out of the employment' refers to the origin or cause of the accidental injury." *Bartlett v. Duke Univ.*, 284 N.C. 230, 233, 200 S.E.2d 193, 194-95 (1973). This Court has held that "while the 'arising out of' and 'in the course of' elements are distinct tests, they are interrelated and cannot be applied entirely independently." *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 247-48, 377 S.E.2d 777, 781, *aff'd per curiam*, 325 N.C. 702, 386 S.E.2d 174 (1989). "Both are part of a *single test of work-connection*." *Id.* at 248, 377 S.E.2d at 781. Because "the terms of the Act should be liberally construed in favor of compensation, deficiencies in one factor are sometimes allowed to be made up by strength in the other." *Hoyle*, 306 N.C. at 252, 293 S.E.2d at 199.

The Commission's determination that an accident arose out of and in the course of employment is a mixed question of law and fact. *Cauble v. Soft-Play, Inc.*, 124 N.C. App. 526, 528, 477 S.E.2d 678, 679 (1996), *disc. review denied*, 345 N.C. 751, 485 S.E.2d 49 (1997). This Court reviews the record to determine if the findings of fact and conclusions of law are supported by the record. *Id.*

### A. "In the Course of Employment" Requirement

[1] "North Carolina adheres to the rule that employees whose work requires travel away from the employer's premises are within the course of their employment *continuously* during such travel, except when there is a distinct departure for a personal errand." *Id.* The

rationale underlying this rule "is that an employee on a business trip for his employer must eat and sleep in various places in order to further the business of his employer." *Id.* (internal quotation marks omitted). In *Martin v. Georgia-Pacific Corp.*, 5 N.C. App. 37, 167 S.E.2d 790 (1969), the Court held that when a traveling employee was struck by a car while walking from his hotel to dinner, his death was a compensable accident:

> He had to eat and he had to sleep. These were necessities incidental to the trip. . . . We think there was a reasonable relationship between Martin's employment and the eating of meals. The eating of meals was reasonably necessary to be done in order that he might perform the act he was employed to do, to wit, attendance at the training program in Milwaukee. We are of the opinion and so hold that while Martin was on his way to eat the evening meal, under the circumstances of this case, that he was at a place where he might reasonably be at such time and doing what he, as an employee, might reasonably be expected to do, and that in so doing he was acting in the course of and scope of his employment.

*Id.* at 43-44, 167 S.E.2d at 794.

In this case, defendants, in challenging the Commission's determination that the assault occurred in the course of plaintiff's employment, contend that the Commission erred in finding that plaintiff was a traveling employee within the meaning of *Martin*. The North Carolina appellate courts have not specifically defined who qualifies as a "traveling employee." The Indiana Court of Appeals has, however, adopted a definition that we find helpful: "A traveling employee is one whose job requires travel from place to place or to a place away from a permanent residence or the employee's place of business." *Olinger Constr. Co. v. Mosbey*, 427 N.E.2d 910, 912 (Ind. Ct. App. 1981). *See also Chicago Bridge & Iron, Inc. v. The Indus. Comm'n*, 248 Ill. App. 3d 687, 694, 618 N.E.2d 1143, 1148 (1993) ("The traveling employee is described . . . as one who is required to travel away from the employer's premises in order to perform his job."); *Boyce v. Potter*, 642 A.2d 1342, 1343 (Me. 1994) ("Traveling employees are employees for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace."); *Shelton v. Azar, Inc.*, 90 Wash. App. 923, 933, 954 P.2d 352, 357 (1998) (describing traveling employees as "[e]mployees whose work entails travel away from the employer's premises").

The question before the Commission in this case was, therefore, whether plaintiff's employment with Southern required plaintiff to travel to a site away from his permanent residence or Southern's place of business. For the traveling employee rationale to apply in a case like this one, the travel must involve a distance sufficient to require plaintiff to find lodging at the site rather than commute from his home.

On the traveling employee issue, the Commission found:

11. On 17 July 2000, plaintiff was an employee whose job involved traveling to the job sites where defendant-employer assigned him work. Since he was then working at a steel mill in Petersburg, Virginia, he was a traveling employee. Defendant-employer did not pay a per diem allowance to local employees. As Mr. Sanders, plaintiff's former supervisor, testified, it was more cost effective for the company to hire local workers since local workers did not receive the per diem travel allowance. Nevertheless, the company routinely assigned employees, including plaintiff, to jobs that required them to travel and find lodging. The fact that defendant-employer's rules prohibited plaintiff from receiving the per diem amount for the night of 17 July 2000 does not negate the fact that plaintiff was required to stay in a motel in the area since he was so far from home, in order to be able to report for work on time the next morning.

Defendants argue that these findings are not supported by the evidence. We disagree.

Plaintiff's testimony and that of defendant Southern's supervisors provides ample evidence to support the Commission's finding that plaintiff's employment involved traveling to job sites where Southern assigned him to work. *See Chicago Bridge & Iron*, 248 Ill. App. 3d at 694, 618 N.E.2d at 1149 (holding that itinerant welder was a traveling employee when he was sent by the employer to various remote job sites, even though he was terminated from the payroll after each job). Further, plaintiff testified that Sanders told him that he was being transferred by Southern to Petersburg.

The evidence also supports the Commission's finding that Southern routinely assigned employees to jobs that required travel and lodging. Both Parker, the Petersburg supervisor, and Sanders, the Durham supervisor, indicated that it was more cost effective to hire local employees because of the lack of any need to pay a per diem,

but that when local employees were unavailable, the job sites requested non-local employees from the project manager at Southern's home offices in Raleigh. Specifically, Parker testified: "[I]f we need help, then we let [Raleigh] know, and then they—[i]f we can't get them locally in the area—[w]e try to hire local help if we can get them. But if you can't, then our Raleigh office will, you know, let us know that they got people looking for a job."

In this case, Parker told his Raleigh project manager that he needed people for the plant shut-down and plaintiff was one of the employees that the project manager "sent." Based on this testimony, the Commission was justified in finding that plaintiff's employment at the Petersburg plant—work that Southern had contracted with the steel mill to perform—required that he travel and stay in motels overnight. Indeed, the evidence establishes, as the Commission found, that plaintiff was paid a per diem while working in Petersburg, although the amount varied between the shut-down job and the maintenance position. As Southern's supervisors confirmed, a per diem was necessary solely because plaintiff was not a local worker and was required to travel. *See Martin*, 5 N.C. App. at 43, 167 S.E.2d at 794 ("That [eating meals at a restaurant] was a necessary incident of the employment is recognized by the employer when it agreed to pay for his meals.").

Other jurisdictions have concluded that comparable facts justified a finding that the employee was a traveling employee. *See, e.g.*, *Olinger*, 427 N.E.2d at 916 ("In a case such as this, however, where the employee's job was away from his home and his employer's offices, where his job location shifted as the employer required, and where the employer paid him on a *per diem* basis to help cover the cost of living away from home, we cannot dispute the Board's prerogative in finding the employee is a traveling employee."); *Brown v. Palmer Constr. Co.*, 295 A.2d 263, 266 (Me. 1972) (holding that plaintiff was a traveling employee when the necessity of his lodging in Vermont was because the employer needed him to complete the work it had contracted to perform in Vermont).

Defendants urge, however, that the Commission improperly labeled plaintiff a traveling employee because, rather than being assigned to work out-of-town by Southern, he chose to accept employment in another state away from home. While the record contains evidence that could support defendants' contention, it also contains evidence that Southern assigned plaintiff, a current employee in Durham, to work in Petersburg, thereby requiring plaintiff to travel

RAMSEY v. SOUTHERN INDUS. CONSTRUCTORS, INC.

[178 N.C. App. 25 (2006)]

and stay in a motel overnight; that the assignment was necessary in order for Southern to perform its contractual responsibilities at the Petersburg plant; and that plaintiff, therefore, fell within the rule for traveling employees.

Defendants argue alternatively that even if plaintiff was a traveling employee with respect to the shut-down job, the maintenance job was a separate, permanent job in which plaintiff was a regular employee rather than a traveling employee. Ken Parker, the plaintiff's foreman in Petersburg, testified that if there had not been a second job for the plaintiff to do in Petersburg, Southern would have laid plaintiff off—testimony indicating that plaintiff was not actually laid off between the first and second job in Petersburg, but instead his employment continued. The Commission found—in a finding of fact not challenged on appeal and, therefore, binding—that the offer of the maintenance position was only for "at least the next week." Plaintiff continued to receive a per diem, although in a lower amount. Neither the Commission's findings of fact nor the record supporting those findings suggests that the nature of plaintiff's employment changed from that of a traveling employee to a local hire. *See Shelton*, 90 Wash. App. at 936, 954 P.2d at 359 (rejecting respondents' argument that the city where the out-of-town job was located had become the employee's home and holding that because the employee "was required to travel to a specific out-of-town location to fulfill the terms of his employment[,] [h]e, therefore, was exposed to greater risks than an employee required only to travel in an ordinary commute from home").

Further, defendants contend that because the maintenance job involved fixed hours at a fixed location, plaintiff was not a traveling employee. Defendants have, however, confused the analysis of the "going and coming" rule with the rule for traveling employees.[1] As the leading commentators on workers' compensation law have stated: "[A] compromise on the subject of going to and from work has been arrived at, largely by case law, with a surprising degree of unanimity:

---

1. The cases relied upon by defendants do not involve overnight travel and, therefore, do not implicate the traveling employee rule. *See, e.g., Hunt v. Tender Loving Care Home Care Agency, Inc.*, 153 N.C. App. 266, 269, 569 S.E.2d 675, 678 (holding that "going and coming" rule applied to a nursing aide, who worked solely for one patient with regular hours and was not required, during the day, to attend to several patients at different locations), *disc. review denied*, 356 N.C. 436, 572 S.E.2d 784 (2002); *Kirk v. N.C. Dep't of Corr.*, 121 N.C. App. 129, 132, 465 S.E.2d 301, 303 (1995) (holding that "going and coming" rule was inapplicable when the employee was commuting from his home to a required training site each day), *disc. review improvidently allowed*, 344 N.C. 624, 476 S.E.2d 105 (1996).

for an employee having fixed hours and place of work, going to and from work is covered only *on the employer's premises*." 1 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 13.01[1], at p. 13-3 (2005).

Traveling employees are, however, subjected to a separate rule. *See, e.g., Olinger*, 427 N.E.2d at 915 (holding that rationale behind the traveling employee rule "applies equally to an employee who travels to a fixed location and stays there to do his job"); *Ramirez v. Dawson Prod. Partners, Inc.*, 128 N.M. 601, 606, 995 P.2d 1043, 1048 (N.M. Ct. App. 2000) ("[T]he traveling-employee rule recognizes that the conditions faced by employees working 'on the road,' away from home and away from their employer's home office, are sufficiently different from the conditions faced by employees merely going to or from their local place of employment on a daily basis to warrant a distinct rule."); *Duncan v. Ohio Blow Pipe Co.*, 130 Ohio App. 3d 228, 235, 719 N.E.2d 1029, 1034 (1998) (holding that the fact that the employee had fixed hours and a fixed work location for purposes of the "coming-and-going" rule "does not end the inquiry," and the employee may still prevail upon demonstrating that he is a traveling employee). The issue is not whether the assignment entails more than one location or varying hours, but whether traveling over night was a necessary incident of the employment.

In sum, because the record contains competent evidence that plaintiff was a traveling employee at the time of his injury, the Commission did not err in making such a determination. As a traveling employee, plaintiff met the requirement for establishing his injury occurred in the course of his employment.

B. "Arising Out of" the Employment Requirement

[2] In discussing the "arising out of" requirement, the parties each take the most extreme position. According to plaintiff, the mere fact that he was injured while traveling at the request of the employer renders the injury compensable as "arising out of" his employment. Under this approach, a finding that the employee was a "traveling employee" would resolve both the "in the course of" and the "arising out of" requirements. Our Supreme Court has, however, held that even if an employee amounts to a traveling employee for purposes of determining whether an injury occurred within the course of employment, the employee must still establish that the injury arose out of his employment. *See Roberts v. Burlington Indus., Inc.*, 321 N.C. 350, 354, 364 S.E.2d 417, 421 (1988) (noting that the employer did

not dispute that the injury occurred in the course of employment, but proceeding to address the "arising out of" requirement); *Bartlett*, 284 N.C. at 235-36, 200 S.E.2d at 196 (reversing Commission because even conceding that the decedent, a traveling employee, died in the course of his employment, he had not established that his death arose from his employment).

Defendants, on the other hand, urge this Court to hold that a traveling employee may not meet the "arising out of" requirement unless the injury occurred while he was performing his work duties. This approach would eviscerate the "traveling employee" rule adopted by our courts, which provides that employees are considered " 'to be within the course of their employment *continuously* during the trip, except when a distinct departure on a personal errand is shown.' " *Chandler v. Nello L. Teer Co.*, 53 N.C. App. 766, 768, 281 S.E.2d 718, 720 (1981) (emphasis added) (quoting *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 179, 123 S.E.2d 608, 611 (1962)), *aff'd per curiam*, 305 N.C. 292, 287 S.E.2d 890 (1982). This Court has held that, under this rule, "injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." *Martin*, 5 N.C. App. at 41, 167 S.E.2d at 793. If we were to adopt defendants' view, no injury arising out of sleeping in hotels or eating away from home would be compensable because it would not occur while the employee was working. *See Ramirez*, 128 N.M. at 607, 995 P.2d at 1049 ("[G]iven the rationale behind the [traveling employee] exception, it would make little sense to provide coverage for traveling employees only while they are actually performing the duties of their jobs.").

In short, neither of the approaches urged by the parties is consistent with North Carolina precedent regarding traveling employees. We agree with defendant, however, that our courts have applied an "increased risk" analysis and have rejected the "positional risk" doctrine in applying the "arising out of" requirement. This Court has explained:

> [T]he "increased risk" analysis . . . focuses on whether the *nature* of the employment creates or increases a risk to which the employee is exposed. *Roberts*, 321 N.C. at 358, 364 S.E.2d at 422. This "increased risk" analysis is different from the "positional risk" doctrine, "which holds that '[a]n injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of employment placed claimant in the position where he was killed.' " *Id.* (quoting 1 A. Larson, *The Law*

*of Workmen's Compensation* § 6.50 (1984)). Our Supreme Court has chosen to follow and apply the "increased risk" analysis instead of relying on the more liberal "positional risk" doctrine.

*Dildy v. MBW Invs., Inc.*, 152 N.C. App. 65, 69, 566 S.E.2d 759, 763 (2002). We disagree, however, with defendants' application of the "increased risk" test.

Defendants assert that the Commission failed to find and the evidence failed to show that "there was anything about the peculiar nature of plaintiff's employment *as an electrician* that increased his risk of injury at the Flagship Inn." (Emphasis added.) Defendants have not taken into account the fact that an incident of plaintiff's employment is that he was a traveling employee. *See Martin*, 5 N.C. App. at 43, 167 S.E.2d at 794 (" 'While lodging in a hotel or preparing to eat, or while going to or returning from a meal, [the employee] is performing an act incident to his employment, unless he steps aside from his employment for personal reasons.' " (quoting *Thornton v. Hartford Accident & Indem. Co.*, 198 Ga. 786, 790, 32 S.E.2d 816, 819 (1945))); *Duncan*, 130 Ohio App. 3d at 237, 719 N.E.2d at 1035 (holding that because plaintiff, at the direction of his employer, traveled to an employment assignment in another state, his "exposure to the risks associated with travel were quantitatively greater than that of the general public"). Both *Bartlett* and *Roberts* establish that when the employee is a traveling employee, the question is whether the employee was subjected to an increased risk because of the requirement that he travel.

In *Bartlett*, the Supreme Court held that for an employee to meet the "arising out of" requirement, the injury

> must come from a risk which might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. The test excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

RAMSEY v. SOUTHERN INDUS. CONSTRUCTORS, INC.

[178 N.C. App. 25 (2006)]

284 N.C. at 233, 200 S.E.2d at 195 (internal quotation marks omitted). In *Bartlett*, the employee, who was a traveling employee, died after choking on a piece of meat he was eating at a restaurant. The Court held that the plaintiff had failed to establish that this death arose out of his employment because:

> [t]he risk that [the employee] might choke on a piece of meat while dining at the Orleans House was the same risk to which he would have been exposed had he been eating at home or at any other public restaurant in the Washington area. Whether employed or unemployed, at home or traveling on business, one must eat to live. *In short, eating is not peculiar to traveling*; it is a necessary part of daily living, and one's manner of eating, as well as his choice of food, is a highly personal matter.

*Id.* at 234, 200 S.E.2d at 195 (emphasis added). Thus, under *Bartlett*, a traveling employee's injury may be compensable if it results from a risk that is "peculiar to traveling."[2]

In *Roberts*, 321 N.C. at 355, 364 S.E.2d at 421, the Court stated that "[t]he basic question is whether the employment was a contributing cause of the injury." The Court noted that "[a]t times this Court has applied an 'increased risk' analysis in determining whether the 'arising out of the employment' requirement has been met." *Id.* at 358, 364 S.E.2d at 422. Under that approach, "the injury arises out of the employment if a risk to which the employee was exposed because of the nature of the employment was a contributing proximate cause of the injury, and one to which the employee would not have been equally exposed apart from the employment." *Id.*, 364 S.E.2d at 423. With respect to traveling employees, the Court held "that when an employee's duties require him to travel, the hazards of the journey are risks of the employment." *Id.* at 359, 364 S.E.2d at 423. In *Roberts*, the employee was struck by a car and killed after he attempted to help an injured pedestrian. The Court concluded that the plaintiff had failed to meet the "arising out of" requirement because "the required travel merely placed decedent in a position to seize the opportunity to rescue the injured pedestrian. His decision to render aid created the danger; *the risk was not a hazard of the journey*." *Id.* (emphasis added).

The question before the Commission was, therefore, whether the risk of assault at the motel was a hazard of the journey or, in other

---

2. The Supreme Court subsequently acknowledged "peculiar to traveling" as the *Bartlett* test in *Roberts*, 321 N.C. at 359, 364 S.E.2d at 423.

words, as articulated in *Bartlett*, a risk peculiar to traveling. The Commission made the following pertinent finding of fact:

12. At the time of the assault, plaintiff was getting ice at the motel where he was staying. This was an activity that a traveling employee would reasonably be expected to do. The purpose of the assault was robbery. Plaintiff did not know his assailants. There was no personal motive involved with the attack. A traveler staying in a motel would be expected to be carrying cash in order to pay for meals, drinks, fuel and other incidental expenses. Consequently, as a traveling employee at a low cost motel, plaintiff would have been placed at some risk for being robbed. The risk was incidental to his employment, which required him to obtain lodging away from home in places where he was unfamiliar with the neighborhood.

This reasoning is sufficient to meet the *Bartlett* and *Roberts* test. The hazard to which plaintiff in this case was exposed, assault and robbery, was not something to which he would have been equally exposed apart from his employment-required travel, that necessitated plaintiff's stay in an inexpensive motel located in unfamiliar surroundings. Being assaulted and robbed while obtaining ice from an ice machine to make lunch is a hazard of the journey and a risk peculiar to traveling.

Other jurisdictions reviewing facts analogous to those in this case have reached similar conclusions. In *Ark. Dep't of Health v. Huntley*, 12 Ark. App. 287, 292, 675 S.W.2d 845, 848-49 (1984), the court held that an employee suffered compensable injuries when her out-of-town service calls required her to check into a motel room and she was assaulted as she walked back to her motel room from a nearby bar. Similarly, in *Jean Barnes Collections v. Elston*, 413 So. 2d 797, 798 (Fla. Ct. App. 1982), the court held that a traveling employee sustained a compensable accident when she was raped in her hotel room. In *Brown*, 295 A.2d at 267, the court held that an employee, who was assigned to an out-of-town job and who was provided with additional money to cover living expenses while away from home, was entitled to workers' compensation when the gas stove in his rented apartment blew up.

Defendants' contention that the Commission applied a "positional risk" analysis fails to take into account the fact that plaintiff was a traveling employee. Plaintiff has not been awarded compensa-

tion simply because his employment placed him a position to be injured, but rather because—as required by the "increased risk" doctrine—an incident of his employment, traveling, increased his risk of incurring precisely this type of injury.

*Dodson v. Dubose Steel, Inc.,* 358 N.C. 129, 591 S.E.2d 548 (2004), *rev'g per curiam for the reasons in the dissent,* 159 N.C. App. 1, 582 S.E.2d 389 (2003), does not provide otherwise. In *Dodson,* the dissenting opinion adopted by the Supreme Court specifically noted that confrontations while driving could occur "at anytime to any member of the general public in the normal course of operating a motor vehicle." 159 N.C. App. at 15, 582 S.E.2d at 398 (Steelman, J., dissenting). The fact that the plaintiff was on a business trip did not increase his risk of being a victim of road rage beyond the risk he ran when driving while at home.

Even more significantly, the dissenting opinion in *Dodson* stressed that once the plaintiff exited his truck to confront the driver, "his conduct was no longer related to his employment." *Id.* at 16, 582 S.E.2d at 398. He was on a personal, rather than an employment-related, mission: "[I]t was [plaintiff's] independent and voluntary act of getting out of his truck to confront [the driver] which created the risk that he could be struck by another vehicle. The risk of injury was not created by the nature of his employment." *Id.* By contrast, plaintiff's injuries in this case were the result of a risk arising from staying in a motel and eating away from home—a type of risk that our appellate courts have already determined is incident to the employment of a traveling employee. *Martin,* 5 N.C. App. at 42, 167 S.E.2d at 793 (noting that traveling employees, whether or not on call, usually do receive protection when the injury has its origin in a risk created by the necessity of sleeping and eating away from home).

Nothing in *Dodson* suggests that the Supreme Court or the dissenting opinion intended to *sub silentio* overrule the *Bartlett* and *Roberts* test or the well-established law regarding traveling employees. If, however, we adopted defendants' application of *Dodson,* it would necessarily preclude recovery for injuries arising out of the risk of staying in hotels or eating in restaurants. We decline to so construe *Dodson* without affirmative guidance from our Supreme Court.

Because we believe the circumstances in their entirety furnished competent evidence for the Commission to decide that plaintiff's injuries arose out of his employment, we affirm the Commission's ruling that plaintiff suffered a compensable injury by accident. Since

defendants present no other basis for overturning the Commission's determination, we affirm the Commission's award of compensation.

### Plaintiff's Appeal

[3] Plaintiff argues that the Commission erred in concluding that he failed to meet his burden of proving that he is totally disabled. In order to support a conclusion of compensable disability, the Commission must find:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Under this test, the employee "bears the burden of showing that [he] can no longer earn [his] pre-injury wages in the same or any other employment, and that the diminished earning capacity is a result of the compensable injury." *Gilberto v. Wake Forest Univ.*, 152 N.C. App. 112, 116, 566 S.E.2d 788, 792 (2002).

An employee may meet his or her burden of proving disability in one of four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

Plaintiff, however, argues that he had no burden under *Russell* because he was entitled to a presumption of disability. This Court has previously held that a presumption of disability arises only "(1) by a previous Industrial Commission award of continuing disability, or (2)

by producing a Form 21 or Form 26 settlement agreement approved by the Industrial Commission." *Cialino v. Wal-Mart Stores*, 156 N.C. App. 463, 470, 577 S.E.2d 345, 350 (2003). Since there was neither a previous award of continuing disability nor a Form 21 or Form 26 agreement, plaintiff could not rely upon a presumption of disability and was required to meet his burden of proof under *Russell*.

Plaintiff relies only on the first and third methods of proof under *Russell*. With respect to the first method, a review of the record reveals, as the Commission found, a lack of any medical evidence that plaintiff was unable to work at "any employment." Dr. Wooten testified that plaintiff could not lift objects over his head anymore, that he suffered a 25% permanent loss of the use of his arm because of the injury, and that, since he had other congenital problems with his left arm, the partial loss of the use of his right arm might make him more disabled than he would otherwise be as a result of the injury. We are in agreement with the Commission that although this medical evidence may suggest plaintiff might not be able to secure all types of employment, it does not meet plaintiff's burden of proving that he could not obtain work in any type of employment because of his work-related injury.

With respect to the third method of proof under *Russell*, the Commission similarly found the evidence insufficient to establish that it would have been futile for plaintiff to seek alternative employment. Plaintiff contends that the Commission erred in failing to take into account his receipt of Social Security disability benefits when making this finding.

In *Demery v. Perdue Farms, Inc.*, 143 N.C. App. 259, 266-67, 545 S.E.2d 485, 491, *aff'd per curiam*, 354 N.C. 355, 554 S.E.2d 337 (2001), this Court held:

> [E]vidence Plaintiff received payments pursuant to an employer-funded disability plan is not evidence Plaintiff is disabled within the meaning of the Workers' Compensation Act unless the evidence shows those payments were made because Plaintiff was incapable, due to her carpel tunnel syndrome [work-related injury], of earning wages she had earned before this injury in the same or any other employment.

The only evidence in the record regarding plaintiff's Social Security disability benefits is the following testimony by plaintiff:

Q. And the only form of income that you personally have is Social Security Disability?

A. Yes, sir.

Q. And that was approved January of 2001; is that right?

A. Right, yes, sir.

Q. And that [was] retroactive back to the date of this injury we're here to talk about today, July 17th of 2000; is that right?

A. Right, yes, sir.

This evidence, standing alone, is not sufficient to meet the requirements of *Demery*. In any event, the evidence—limited to a bare statement regarding receipt of benefits—certainly did not compel the Commission to conclude that plaintiff met his burden of proving total disability.

[4] Lastly, plaintiff argues the Commission erred by ruling that plaintiff's period of disability ended at the date he reached maximum medial improvement ("MMI"), citing cases that stand for the proposition that MMI does not preclude a claimant from receiving ongoing temporary disability benefits. *See Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 14, 562 S.E.2d 434, 443 (2002) ("[T]he concept of MMI does not have any direct bearing upon an employee's right to continue to receive temporary disability benefits once the employee has established a loss of wage-earning capacity pursuant to N.C. Gen. Stat. § 97-29 or § 97-30."), *aff'd per curiam*, 357 N.C. 44, 577 S.E.2d 620 (2003). Nowhere, however, in its decision, did the Commission suggest that plaintiff's benefits were being terminated because he had reached MMI. Instead, the Commission asserted only that plaintiff had failed to prove continuing total disability after 5 April 2001, the date that Dr. Wooten released plaintiff to return to work.

In conclusion, plaintiff has failed to demonstrate any basis for overturning the Commission's denial of ongoing total disability benefits following 5 April 2001. We, therefore, affirm the Commission's opinion and award.

Affirmed.

Judges CALABRIA and ELMORE concur.