ROBERT L. NOBLES, JR., Employee, Plaintiff v. COASTAL POWER & ELECTRIC, INC., Employer, AMERICAN INTERSTATE INSURANCE COMPANY, (AMERISAFE, Administrator), Carrier, Defendants

No. COA10-321

(Filed 2 November 2010)

**1. Workers' Compensation— suitable employment refused— supported by the evidence**

The Industrial Commission's conclusion that plaintiff unjustifiably refused defendant's multiple offers of a suitable fleet manager's assistant position was supported by the findings of fact, which were in turn supported by competent evidence of record.

**2. Workers' Compensation— disability—earning capacity— credibility of expert**

Plaintiff's argument that the Industrial Commission erred in finding that plaintiff's expert did not offer an opinion regarding plaintiff's earning capacity and in concluding that plaintiff was not disabled was overruled. The Commission is the exclusive judge of credibility and it was within its authority to give little weight to plaintiff's expert's testimony.

Appeal by Plaintiff from opinion and award entered 5 January 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 September 2010.

*Greg Jones & Associates, P.A., by Cameron D. Simmons, for Plaintiff-Appellant.*

*Brooks, Stevens & Pope, P.A., by Michael C. Sigmon and Becky B. Johnson, for Defendants-Appellees.*

BEASLEY, Judge.

Robert L. Nobles, Jr. (Plaintiff) appeals from an opinion and award of the Full Commission of the North Carolina Industrial Commission (the Commission) awarding him temporary total disability benefits from the date of injury but no further than the date he attained maximum medical improvement. Specifically, Plaintiff challenges the Commission's findings that he unjustifiably refused suitable employment offered by Coastal Power & Electric, Inc. (Defendant or Employer) and that Plaintiff failed to prove disability beyond the date he reached maximum medical improvement. For the following reasons, we affirm the Commission's award.

NOBLES v. COASTAL POWER & ELEC., INC.

[207 N.C. App. 683 (2010)]

Defendant corporation builds transmission power lines in North and South Carolina and maintains its home office in Wilmington, North Carolina. Plaintiff resides in Cerro Gordo, North Carolina and has worked for Defendant and its predecessors for over twenty years, performing power line installation at the employer's various job sites. The parties herein stipulated that on 4 August 2005, Plaintiff sustained a compensable injury to his left leg. Defendant and its carrier, American Interstate Insurance Company, (collectively Defendants) accepted Plaintiff's claim on 18 August 2005 and began providing disability and medical compensation at that time. On 10 April 2008, Defendants filed a Form 33 request for a hearing on the ground that Plaintiff was no longer totally disabled. The Commission reviewed the matter on 17 November 2009.

Plaintiff was admitted to the hospital on the date of injury, and his leg fracture was surgically stabilized by Dr. Frank Noojin. Following his discharge from the hospital, Plaintiff underwent three additional surgeries, and on 21 January 2008, Dr. Noojin opined that he had reached maximum medical improvement (MMI). Plaintiff received a Functional Capacity Evaluation (FCE) that determined he was capable of work at a medium physical demand level. Defendant identified two positions, radio operator and fleet manager's assistant, both of which were largely sedentary, as likely within Plaintiff's work restrictions. Dr. Noojin approved both positions but commented that he believed the fleet manager's assistant position better suited Plaintiff. Thereafter, Plaintiff returned to Dr. Noojin with complaints of left knee pain, and an MRI was ordered, which revealed a medial meniscus tear that Dr. Noojin related to Plaintiff's 4 August 2005 compensable injury. Dr. Noojin rescinded Plaintiff's MMI status, and left knee surgery was performed on 1 July 2008.

Plaintiff was released to light-duty sedentary work on 7 July 2008, and on 30 July 2008, he was advised that the sedentary office position of fleet manager's assistant, which had been only intermittently filled in the past, remained available to him at a rate of $19.50 per hour. Plaintiff indicated that, because he had not yet reached MMI, he would be willing to try the position on the condition that a company truck be furnished for Plaintiff's use. Acknowledging that a company truck had previously been provided as a necessary component of Plaintiff's pre-injury job, Defendant explained that company trucks are not provided for office staff positions and denied Plaintiff's demand. The fleet manager assistant's position was again offered to Plaintiff by letter dated 8 October 2008. On or about 23 December

2008, Dr. Noojin released Plaintiff at MMI with medium-duty work restrictions, consistent with the FCE performed in February. However, Dr. Noojin testified that although the FCE revealed a medium-duty capacity to work, Plaintiff's sustained physical capabilities are more consistent with a light-duty job. Dr. Noojin also testified that he had no concerns regarding Plaintiff's ability to perform the fleet manager's assistant position. While Dr. Noojin had previously opined to Plaintiff's counsel that it would not be appropriate for Plaintiff to commute the 60.3 miles from Cerro Gordo to Defendant's office in Wilmington, he later testified to his opinion that Plaintiff is physically capable of performing the drive to perform the fleet manager's assistant position.

The Commission found the fleet manager's assistant position to be suitable employment, unjustifiably refused by Plaintiff. The Commission also found that Plaintiff failed to establish that he was unable to earn his pre-injury average weekly wage in any employment as a result of his compensable injury. Accordingly, the Commission concluded that Plaintiff failed to prove disability and was entitled to temporary total disability payments at a weekly rate of $514.38 from 4 August 2005 through 23 December 2008 and no further, subject to a credit for any disability benefits already paid by Defendants beyond that date. Plaintiff appeals.

On appeal from the Full Commission's opinion and award, this Court's task is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). " 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citation omitted). Thus, our "duty goes no further than to determine whether the record contains any evidence tending to support the finding," and this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight." *Deese*, 352 N.C. at 115, 530 S.E.2d at 552 (internal quotation marks and citations omitted). As such, the Commission's findings of fact "are conclusive on appeal when supported by [any] competent evidence, even though there be evidence that would support findings to the contrary," *Id.* at 116, 530 S.E.2d at 552-53 (internal quotation marks and citations omitted), and may be set aside only "when there is a complete lack of competent evidence to support them," *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230,

538 S.E.2d 912, 914 (2000). However, the Commission's conclusions of law are reviewed de novo. *Ramsey v. Southern Indus. Constructors, Inc.*, 178 N.C. App. 25, 30, 630 S.E.2d 681, 685 (2006).

## I.

[1] Plaintiff contends that the Commission erred by mistakenly applying the law regarding "make-work" and determining that the fleet manager's assistant position offered Plaintiff by Defendant was suitable employment.

The Workers' Compensation Act provides that an injured employee is not entitled to compensation if he unjustifiably "refuses employment procured for him suitable to his capacity." N.C. Gen. Stat. § 97-32 (2009). "Clearly, if the proffered employment is not suitable for the injured employee, the employee's refusal thereof cannot be used to bar compensation to which the employee is otherwise entitled." *Moore v. Concrete Supply Co.*, 149 N.C. App. 381, 389, 561 S.E.2d 315, 320 (2002). "Suitable employment" is defined as "any job that a claimant is capable of performing considering his age, education, physical limitations, vocational skills, and experience." *Shah v. Howard Johnson*, 140 N.C. App. 58, 68, 535 S.E.2d 577, 583 (2000) (internal quotation marks and citation omitted). The employer bears the burden of showing that an employee refused suitable employment. *Gordon v. City of Durham*, 153 N.C. App. 782, 787, 571 S.E.2d 48, 51 (2002). Once the employer makes this showing, the burden shifts to the employee to show that the refusal was justified. *See, e.g., Moore*, 149 N.C. App. at 389-90, 561 S.E.2d at 320.

Plaintiff challenges finding of fact 34, which is essentially a mixed finding of fact and conclusion of law that states:

> The competent credible evidence establishes that [P]laintiff is physically capable of performing the Fleet Manager's Assistant position. The position is a legitimate position with Defendant-Employer, which even though it has been intermittently filled in the past, has become necessary on a regular basis due to the growth of Defendant-Employer's business. Dr. Noojin's opinions were equivocal at best regarding whether Plaintiff could drive to Wilmington each day to perform the job. Plaintiff himself did not testify that he could not make the drive and the evidence indicates that Plaintiff was more concerned about whether he would be provided with a company truck to make the drive. For these reasons, the Full Commission finds that the Fleet Manager's Assistant position constitutes suitable employment for Plaintiff, which Plaintiff unjustifiably refused.

Plaintiff alleges that finding of fact 34 evinces three errors that were made by the Commission: (1) the Commission looked only to Defendant rather than the competitive labor market when determining job suitability; (2) the Commission failed to consider the clerical nature of the position and comparable wages for such a job; and (3) the Commission did not make findings to show it considered the distance between the proffered job location and Plaintiff's home.

In *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986), our Supreme Court addressed an injured employee's allegation that the newly created position offered him by his employer, which was designed to accommodate his post-injury limitations and had never before been extended to any other individual, was not suitable employment. The Court held that employers may not "avoid paying compensation merely by creating for their injured employees makeshift positions not ordinarily available in the market." *Id.* at 444, 342 S.E.2d at 810; *see also Moore*, 149 N.C. App. at 389-90, 561 S.E.2d at 320 ("[A]n employer cannot avoid its duty to pay compensation by offering the employee a position that could not be found elsewhere under normally prevailing market conditions."). Addressing an employee's contention that he did not unjustifiably refuse suitable employment because the position offered was make-work, our Court explained: "[I]f other employers would not hire the employee with the employee's limitations at a comparable wage level . . . [or] if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market, the job is 'make work' and is not competitive." *Munns v. Precision Franchising, Inc.*, 196 N.C. App. 315, 319, 674 S.E.2d 430, 434 (2009) (internal quotation marks and citation omitted).

The Commission made the following pertinent findings of fact:

12. Defendant-Employer identified two positions, Radio Operator and Fleet Manager's Assistant, as likely within Plaintiff's work restrictions. The Fleet Manager's Assistant position is an office staff position.

13. Regina Sander, Plaintiff's vocational rehabilitation specialist, performed a job analysis of both positions offered by Defendant-Employer. Both positions are to a large extent sedentary.

14. On April 30, 2008, Ms. Sander discussed both jobs with Dr. Noojin. Dr. Noojin was aware that the commute between Plaintiff's residence and Defendant-Employer's office is approximately 60

miles. Dr. Noojin approved both positions; however, he commented that he felt the Fleet Manager's Assistant position was a better choice for Plaintiff. Plaintiff was restricted to light duty.

15. In the past, the Fleet Manager's Assistant position has only intermittently been filled. Employees placed into the Fleet Manager's Assistant position have thereafter been promoted into the Fleet Manager's position. Previous Fleet Manager's Assistants have earned between $18.50 and $27.00.

16. Due to the growth of Defendant-Employer's business, at least one additional person is required to carry out the management of the fleet. Defendant-Employer's fleet of over 400 vehicles includes tractors that haul heavy equipment, track machines, specialized machinery, pickup trucks, tool trailers, and line trucks. Plaintiff is familiar with each of these types of equipment.

As support for his argument that the Commission failed to look to the competitive labor market in determining that Defendant's offer was a legitimate position, Plaintiff relies on cases where the proffered position was newly created for the employee or heavily modified from an existing job with the employer.

In the instant case, however, competent evidence supported the Commission's finding regarding the legitimacy of the fleet manager's assistant position, as opposed to make-work, including testimony about the nature of the position as it existed both before it was offered to Plaintiff and also at the time it was extended. Michelle Swartz, office manager for Defendant, described the voluminous paperwork involved in managing more than 400 work vehicles and machines as "a two-person job." She testified that Defendant's first fleet manager was hired in 2003 through placement of an advertisement in the newspaper and that she served as both office manager and fleet manager's assistant at that time. Thereafter, the assistant's position was filled by new hires and sometimes by two outside consultants who divided the duties of fleet manager's assistant. At one time, the fleet manager was being assisted by two outside consultants and another office assistant due to the overwhelming volume of work.

Preston Free testified that he had obtained the position of fleet manager's assistant after posting a resume online and being contacted by Employer. He earned $20.00 per hour based on similar work experience and "was under the impression that [he] was going to be hired on as a fleet manager assistant with the potential of going as the fleet man-

ager." As the current fleet manager, Mr. Free testified that he generally had to work 45 to 50 hours per week, even with the assistance of other office staff and outside consultants, because of the lack of an assistant. He also stated that in order to ensure Defendant's compliance with federal and state regulations, at least one additional employee was needed to manage the fleet. Ms. Swartz also testified that there were additional duties that Mr. Free needed to assume as fleet manager but had been unable to do so without an assistant to aid him. Moreover, one of the consultants who had assisted the fleet manager testified that a fleet the size of that maintained by Defendant should be managed by two individuals, such as a manager and an assistant manager, and that with only one full-time employee in the department, Defendant's record keeping was substandard.

Thus, competent evidence regarding the need for a fleet manager's assistant and the nature of the position demonstrates that the job was neither created nor modified for Plaintiff. *Cf. Moore*, 149 N.C. App. at 390, 561 S.E.2d at 320 (determining the position constituted make-work specifically created for plaintiff because the position did not exist in the ordinary marketplace, was never advertised to the public, had never been offered previously offered by the employer and was never subsequently filled after being refused by plaintiff, and plaintiff was therefore justified in refusing such employment). Rather, the facts of the case *sub judice* are analogous to the findings in *Munns*, which this Court deemed sufficient to support the availability of the position in the job market. In *Munns*, we noted the Commission's finding that the employer

"has offered this position to the general public in the past and there have been multiple service writers/advisors at the location where [employee] worked." At the hearing, . . . [the] president of operations of employer[] testified that employer had service writers and service advisors in more than half of its stores, and that employer had offered the service writer/advisor position to the general public in the past. [He] further testified that he needed a service writer/advisor to improve his business. . . . [A] personnel director for employer[] testified that, at the time of the hearing, she had an advertisement running for the service writer/advisor position.

*Munns*, 196 N.C. App. at 320, 674 S.E.2d at 434 (first alteration in original). Where such evidence supported the Commission's finding regarding the availability of the position in the job market," we held that "[t]he service writer/advisor position offered to employee was a 'real job,' . . . available in the competitive job market" and left undisturbed the

Commission's conclusion that the employee refused suitable employment on this ground. *Id.*

Similarly, the fleet manager assistant's job offered to Plaintiff in this case was a position which other employees had maintained before and after Defendant made the offers to Plaintiff. Defendant also offered Plaintiff his pre-injury position wage of $19.50 per hour, which is within the range that past fleet manager's assistants have earned. Furthermore, the Commission found that "aside from Defendant-Employer's job offer, Plaintiff has made no effort to seek employment since his injury on August 4, 2005," which Plaintiff does not dispute. Thus, the findings of fact are supported by competent evidence that the position offered to Plaintiff was not especially created for Plaintiff, and as such, constituted an actual job ordinarily available in the competitive job market. Moreover, the Commission's unchallenged findings that previous fleet manager's assistants have earned hourly wages between $18.50 and $27.00, varying with experience, and that Defendant offered Plaintiff $19.50 an hour, sufficiently demonstrate that the pay extended Plaintiff was commensurate with a competitive wage on the open market.

Plaintiff's argument that the Commission failed to address the effect of the distance between his house and proffered job on the suitability determination is meritless. Plaintiff claims that the Commission's findings regarding the distance concerned whether Plaintiff could physically perform the drive, notwithstanding the notion "that suitable employment for a person would normally be located within a reasonable commuting distance of that person's home." *Shah*, 140 N.C. App. at 68, 535 S.E.2d at 583-84. In *Shah*, however, the employer offered the employee his pre-injury job after the employee had moved in with his brother during his period of recovery, and the employee testified that he was not interested in returning to his pre-injury position based on "how [he] felt," not because of any concern about the distance from his new residence to the job location. *Id.* at 70, 535 S.E.2d at 584. This Court affirmed the Commission's finding that the employee's refusal to return to his pre-injury job was not due to the distance and was consequently unjustified. *See id.* at 68-70, 535 S.E.2d at 583-85.

The Commission likewise made several findings in the instant case to support its belief that Plaintiff's refusal of the proffered employment was not premised on the distance between his home and Defendant's Wilmington office:

2. Plaintiff resides in Cerro Gordo, North Carolina. Defendant-Employer's home office is in Wilmington, North Carolina, which is 60.3 miles from Cerro Gordo.

. . . .

5. Plaintiff often had to drive further than the distance between his residence and Wilmington to get from his residence to a job site. When asked how often his work was located closer than the distance between Chadbourn, the closest city to Cerro Gordo, and Wilmington, Plaintiff responded, "Not often." In addition to driving to his assigned job site, Plaintiff would drive from his residence to Defendant-Employer's office in Wilmington approximately once per week to do paperwork on Friday mornings.

. . . .

19. Plaintiff's counsel responded [to the job offer] that because Plaintiff had not reached maximum medical improvement, he would be glad to try the Fleet Manager's Assistant position. However, he required that Defendant-Employer furnish a company truck upon his arrival for mandatory drug screening.

20. Defendant-Employer denied Plaintiff's demand for a company truck. Plaintiff's counsel was advised that Defendant-Employer had previously furnished Plaintiff a truck as a necessary part of his job; however, company trucks are not provided for office staff positions.

. . . .

22. Plaintiff's counsel reiterated the request for a company truck on September 5, 2008.

. . . .

24. . . . [Dr. Noojin] also opined that Plaintiff is physically capable of performing the drive between his residence and Defendant-Employer's office in Wilmington to perform the Fleet Manager's Assistant position.

None of these findings of fact are challenged by Plaintiff and are thus binding on appeal. These findings also demonstrate that the portion of finding of fact 34 "that Plaintiff was more concerned about whether he would be provided with a company truck to make the drive" was supported by competent evidence. Moreover, these findings indicate that,

while distance is ordinarily a factor in determining the suitability of employment, the location of the job and distance of Plaintiff's residence therefrom was not the problem. Rather, the findings of fact indicate that Plaintiff's refusal of the fleet manager's assistant position was premised not on the commute but, rather, on Defendant's policy against providing office staff employees with a company vehicle.

In light of the foregoing, we hold that the Commission's conclusion that Plaintiff unjustifiably refused Defendant's multiple offers of a suitable fleet manager's assistant position is supported by the findings of fact, which are in turn supported by competent evidence of record.

## II.

[2] In his second argument, Plaintiff contends that the Commission erred in finding that Plaintiff's expert did not offer an opinion regarding Plaintiff's earning capacity and in concluding that Plaintiff was not disabled.

"Disability" is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2009). The employee must prove that he is unable to earn the same wages that he had earned before his injury, either in the same or other employment, and that the diminished earning capacity is a result of the compensable injury, *see Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982), a burden which he may meet in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

Here, Plaintiff contests the Commission's finding of fact 36, that Plaintiff's vocational case manager expert, Stephanie Yost, offered no opinion of Plaintiff's earning capacity. The Commission found "Ms. Yost

NOBLES v. COASTAL POWER & ELEC., INC.

[207 N.C. App. 683 (2010)]

performed 2 labor market surveys and concluded that Plaintiff was not employable in the common labor market." In an effort to suggest that he met his burden under the third prong of the *Russell* analysis, Plaintiff argues that this *is* an opinion regarding his earning capacity: "he has none[,] given his present restrictions." However, the Commission also noted that "[l]imited weight [was] given to the testimony of Ms. Yost," indicating that her conclusion that Plaintiff was not employable at a light duty capacity was incredulous to the Commission. Plaintiff argues that this assessment was the only opinion regarding his earning capacity, but it is well-established that the Commission may accept or reject the testimony and opinions of any witness, even if that testimony is uncontradicted. *See Hassell v. Onslow Cty. Bd. of Educ.*, 362 N.C. 299, 306-07, 661 S.E.2d 709, 715 (2008) (stating that "[t]he Commission 'may not wholly disregard competent evidence'; however, as the sole judge of witness credibility and the weight to be given to witness testimony, the Commission 'may believe all or a part or none of any witness's testimony,' " and "[t]he Commission is not required to accept the testimony of a witness, even if the testimony is uncontradicted," nor must it "offer reasons for its credibility determinations"). Where the Commission is the exclusive judge of credibility and did indeed offer reasons for its determination as to Ms. Yost based on her self-contradictory testimony, it properly afforded little weight to her testimony. Furthermore, the Commission's own finding that the fleet manager's assistant position was suitable and, if accepted, would have earned Plaintiff his pre-injury weekly wage, is also evidence contradicting Ms. Yost's opinion. Plaintiff acknowledges that no other evidence regarding his earning capacity was offered, and, as such, the Commission properly found that "Plaintiff has failed to establish that he is unable to earn his pre-injury average weekly wage in any employment as a result of his compensable injury."

In light of the foregoing, the opinion and award of the Full Commission is affirmed.

Affirmed.

Judges BRYANT and STEELMAN concur.