An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-537

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014


CLAUDE L. BARNES,
    Employee, Plaintiff,

    v.

HENDRICK AUTOMOTIVE,
    Employer,

    and

FEDERAL INSURANCE CO.,
    Carrier, Defendants.

North Carolina
Industrial Commission
I.C. No. W80523


Appeal by Plaintiff from opinion and award filed 15 January 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 October 2013.


    *Oxner Thomas & Permar, PLLC, by John R. Landry, Jr., for Plaintiff.*

    *Jones, Hewson & Woolard, by Lawrence J. Goldman, for Defendants.*


    STEPHENS, Judge.


*Factual and Procedural Background*

Plaintiff Claude Barnes suffered a knee injury while serving in the Vietnam War. Before 20 April 2010, the knee injury had not "really ever bothered [him] very much at all." On that date, however, Plaintiff stepped between two fighting employees at work. One of the employees hit Plaintiff, resulting in further injury to his knee and an additional injury to his shoulder. Plaintiff was employed by Defendant Hendrick Automotive at the time. On 28 April 2010, Plaintiff saw Dr. Christopher J. Barnes. Dr. Barnes diagnosed right knee osteoarthritis and noted that Plaintiff's symptoms were likely "an exacerbation of his preexisting arthrosis."

Plaintiff presented to Dr. Murray Seidel on 11 May 2010. Dr. Seidel determined that Plaintiff had probably lost "full extension of his knee for many years." Seven days later, Dr. Seidel recommended knee arthroplasty. Between his visits to Dr. Seidel, Plaintiff also met with Dr. Bradley Broussard. Dr. Broussard diagnosed "tricompartmental degenerative joint disease" and opined that Plaintiff's Vietnam War injury was "probably aggravated" by his workplace injury. Dr. Broussard advised that Plaintiff was "unable to work in any capacity until

further notice."[1] Defendants authorized and paid for the treatment provided in these examinations.

On 18 May 2010, Dr. Seidel allowed Plaintiff to return to work with the restrictions that he (1) not stand continuously for eight to ten hours and (2) sit for at least twenty minutes each hour. There was a dispute regarding Plaintiff's ability to work for Defendant-employer under these restrictions, and Plaintiff thereupon filed a Form 33, requesting a hearing before the North Carolina Industrial Commission ("the Commission").

By order of the Commission, the parties held a mediated settlement conference on 22 July 2011. Plaintiff was represented by counsel during the conference and executed the mediated settlement agreement ("MSA") as a result. Pursuant to the MSA, Plaintiff waived his right to further workers' compensation benefits, including any right to reimbursement for expenses paid by Plaintiff, in return for $15,000. Among other things, the parties agreed to "execute all necessary [f]orms and/or a standard [c]ompromise [s]ettlement [a]greement ("CSA")[2] which complie[d] with [N.C. Gen. Stat. §] 97-17." The CSA was to be prepared by Defendants. Defendants submitted the CSA to Plaintiff's counsel on 1 August 2011. Sixteen days later,

---

[1] The record does not indicate that Plaintiff met with Dr. Broussard again.
[2] A CSA is also known as a "clincher agreement."

Plaintiff's counsel advised Defendants' counsel that Plaintiff refused to sign the CSA. As a result, Defendants filed a Form 33 requesting a hearing.

The hearing was held on 7 November 2011. Afterward, the deputy commissioner concluded that the MSA was unenforceable due to failure to comply with N.C. Gen. Stat. § 97-17(b)(2) and Industrial Commission Rule 502. Accordingly, the deputy commissioner declined to approve the MSA as a final settlement agreement. Defendants appealed to the full Commission. On 15 January 2013, the Commission concluded that the MSA was a valid and enforceable contract under section 97-17 and Rule 502. In addition, the Commission concluded that the MSA was fair and just and that Plaintiff had failed to establish fraud, misrepresentation, undue influence, or mutual mistake of fact. Therefore, Plaintiff was compelled to execute the CSA and Defendants were ordered to make payments in accordance with that agreement. Plaintiff appeals the Commission's 15 January 2013 opinion and award.

*Standard of Review*

Review of an opinion and award of the Commission "is limited to consideration of whether competent evidence supports [its] findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim*

*Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted). Where there is competent evidence to support the Commission's findings, they are binding on appeal even in light of evidence to support contrary findings. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004). The Commission's conclusions of law are reviewed *de novo*. *Ramsey v. S. Indus. Constructors, Inc.*, 178 N.C. App. 25, 30, 630 S.E.2d 681, 685 (2006). Unchallenged findings of fact are binding on appeal. *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (2003).

*Discussion*

On appeal, Plaintiff argues that the Commission erred in determining that the MSA was valid and enforceable against him because (1) the MSA did not comply with Rule 502 or N.C. Gen. Stat. § 97-17, (2) there was no meeting of the minds between the parties, and (3) the terms of the MSA were not fair and just. Accordingly, Plaintiff asserts that he is not bound by the terms of the MSA because he refused to sign it.[3] We affirm the

---

[3] Plaintiff also states in numerous places throughout his brief that "Defendants did not file a Form 60, 61, or 63 with the Industrial Commission in response to Plaintiff's Form 18." Plaintiff does not explain, however, how this asserted fact affects the validity of the Commission's opinion and award or how it applies to the arguments he has raised on appeal. This does not constitute a reviewable argument, and we do not address it further. *See generally* N.C.R. App. P. 28(a) ("The function of all briefs required or permitted by these rules is to define

Commission's opinion and award, which enforced the MSA against Plaintiff and compelled him to execute the CSA.

*I. Rule 502 and N.C. Gen. Stat. § 97-17*

As Plaintiff notes in his brief, the MSA did not include a list of Plaintiff's known medical expenses, but the CSA did. On appeal, Plaintiff argues that Defendants violated Industrial Commission Rule 502 and N.C. Gen. Stat. § 97-17 by failing to include a list of medical expenses as part of the MSA. Therefore, Plaintiff contends, he is not bound by that document. We disagree.

Industrial Commission Rule 502, entitled "Compromise Settlement Agreements," states in pertinent part that:

> (c) No compromise agreement will be considered unless the following additional requirements are met:
>
> . . .
>
> > (3) The settlement agreement must contain a list of all of the known medical expenses of the employee related to the injury to the date of the settlement agreement, including medical expenses that the employer or insurance carrier disputes, when the employer or carrier has not agreed to pay all medical expenses of the employee

clearly the issues presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. The scope of review on appeal is limited to issues so presented in the several briefs.").

> related to the injury up to the date of the settlement agreement.

4 N.C. Admin. Code 10A.0502 (2012).[4]

The heading for Rule 502 specifies that the language contained therein, requiring a "list of all known medical expenses" to be included in the settlement agreement, limits that requirement to *compromise* settlement agreements. Because Defendants included a list of medical expenses as a part of the compromise settlement agreement in this case — *i.e.*, the CSA — they did not violate Rule 502. Accordingly, Plaintiff's argument is overruled as it pertains to Rule 502.

N.C. Gen. Stat. § 97-17, entitled "Settlements allowed in accordance with Article," reads in pertinent part as follows:

> (a) This article does not prevent settlements made by and between the employee and employer so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this Article. A copy of a settlement agreement shall be filed by the employer with and approved by the Commission. No party to any agreement for compensation approved by the Commission shall deny the truth of the matters contained in the settlement agreement,

---

[4] Plaintiff refers to this rule as "502(3)(c)," and the Commission's website lists it as the same. Workers' Compensation Rules, The North Carolina Industrial Commission http://www.ic.nc.gov/ncic/pages/comprule.htm (revisions effective 1 January 2011 and 1 January 2013). Title 4 of the 2012 edition of the North Carolina Administrative Code ("the Code"), however, lists this rule as 502(c)(3). Treating the Code as the authoritative text, we use the latter designation.

unless the party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Commission may set aside the agreement. . . .

(b) The Commission shall not approve a settlement agreement under this section, unless all of the following conditions are satisfied:

(1) The settlement agreement is deemed by the Commission to be fair and just, and that the interests of all of the parties and of any person, including a health benefit plan that paid medical expenses of the employee[,] have been considered.

(2) The settlement agreement contains a list of all the known medical expenses of the employee related to the injury to the date of the settlement agreement, including medical expenses that the employer or carrier disputes, and a list of medical expenses, if any, that will be paid by the employer under the settlement agreement.

(3) The settlement agreement contains a finding that the positions of all of the parties to the agreement are reasonable as to the payment of medical expenses. . . .

N.C. Gen. Stat. § 97-17(a)-(b) (2013) (emphasis added).

While section 97-17 does not expressly use the term "compromise settlement agreement," as Rule 502 does, we conclude

that the "settlement agreement" to which section 97-17 pertains is the final compromise settlement agreement required to be approved by the Commission. *See id.* The mediated settlement agreement is simply the document used to memorialize the substantive terms reached between the parties during the mediated settlement conference. It is not the settlement agreement that the Commission approves. While the terms memorialized in a mediated settlement agreement may be used to enforce the parties' settlement, the practice of memorializing the settlement in a mediated settlement agreement document is not — and was never meant to be — the same as the creation of the final settlement agreement strictly regulated under section 97-17. That is the role of the compromise settlement agreement. *See, e.g.*, *Lemly v. Colvard Oil Co.*, 157 N.C. App. 99, 104, 577 S.E.2d 712, 716 (2003) (holding that the mediated settlement agreement was enforceable against the plaintiff even though the agreement lacked "all the required terms and language" because it was signed by the parties and conformed with the compromise settlement agreement). Therefore, we hold that the MSA is not unenforceable under Rule 502 or section 97-17 for lacking a list of medical expenses when such a list was included in the CSA. Accordingly, Plaintiff's first argument is overruled.

*II. Meeting of the Minds*

In his second argument on appeal, Plaintiff contends that the MSA is unenforceable because there was no "meeting of the minds" during the mediated settlement conference. For support, Plaintiff cites an alleged contradiction between (a) the MSA and his own testimony as compared to (b) a statement made by counsel for Defendants during the 7 November 2011 hearing before the deputy commissioner. The MSA states that "Defendants have reasonably denied Plaintiff's claims for compensation." At the hearing, Plaintiff testified that he understood Defendants had "denied the whole [20 April 2010] claim." At the same hearing, however, counsel for Defendants stated that "Plaintiff sustained an admittedly compensable right knee injury on [20 April 2010]." Therefore, Plaintiff asserts that the MSA is not enforceable because "[t]he foregoing facts offer competent evidence that there was not a meeting of the minds as to the accepted versus denied status of Plaintiff's claim for purposes of settlement of his claim via the [MSA]." We disagree.

Plaintiff's argument misapprehends our role in reviewing an opinion and award of the Commission. As noted above, we review the Commission's conclusions of law to ensure they are supported by its findings of fact and review its findings of fact to ensure that they are supported by competent evidence. *Richardson*, 362 N.C. at 660, 669 S.E.2d at 584. We lack the

authority to weigh the evidence and make findings based on that evidence. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) ("The findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence. Thus, on appeal, [the appellate court] does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes *no further* than to determine whether the record contains *any evidence* tending to support the finding.") (citation and internal quotation marks omitted; emphasis added).

In this case, the Commission found the following pertinent facts:

> 5. Although[] the July 22, 2011 [MSA] indicates in regards to "Compensability" that "Defendants have reasonably denied Plaintiff's claims for compensation," Defendants' post-hearing contentions submitted to the Deputy Commissioner stated that "Plaintiff sustained an admittedly compensable right knee injury on April 20, 2010."
>
> . . .
>
> 17. In considering whether the settlement amount is fair and just and in the best interest of all parties, the . . . Commission has considered that there were contested issues in this claim, which included the differing medical opinions as to the extent of Plaintiff's work restrictions, whether Defendant-[e]mployer could accommodate those work restrictions, and the need for future medical treatment

and whether the potential future surgery referenced by Dr. Seidel would be related to the work injury or entirely the result of the pre-existing knee injury from Plaintiff's military service in Vietnam, as well as Plaintiff's alleged failure to recall his reading or signing the [MSA] due to low blood sugar. Based upon a preponderance of the evidence of record, the . . . Commission finds that the $15,000.00 settlement amount was fair and just and in the best interests of all parties.

18. . . . Plaintiff knowingly and willingly, and with counsel, entered into a binding contractual agreement at mediation to execute a [CSA] that would compromise and finally settle the workers' compensation claim related to his April 20, 2010 injury.

Acknowledging counsel for Defendants' post-hearing contention to the deputy commissioner, the Commission nonetheless determined that the MSA constituted a binding contractual agreement. Plaintiff does not dispute this finding as not based on competent evidence or not supporting the Commission's conclusions of law. Therefore, it is binding on appeal, "even though there is evidence that would support findings to the contrary," *McRae*, 358 N.C. at 496, 597 S.E.2d at 700,[5] and Plaintiff's second argument is overruled.

---

[5] We note that the post-hearing statement made by counsel for Defendants was not necessarily contradictory. It is reasonable to admit the occurrence of an on-the-job incident, but deny for other reasons the existence of a right to compensation, as was clearly the case here.

Even assuming that Plaintiff properly challenged the Commission's findings as not based on competent evidence or not supporting its conclusions of law, we note that there is evidence in the record to support the existence of a meeting of the minds between the parties during the mediated settlement conference. As a rule, "compromise settlement agreements, including mediated settlement agreements, are governed by general principles of contract law." *Kee v. Caromont Health, Inc.*, 209 N.C. App. 193, 195, 706 S.E.2d 781, 783 (2011) (citation and internal quotation marks omitted). Such principles dictate that

> [t]he court is to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

*Williams v. Habul*, __ N.C. App. __, __, 724 S.E.2d 104, 111 (2012) (citations and internal quotation marks omitted). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995)

(citation omitted). "When a party affixes his signature to a contract, he is manifesting his assent to the contract." *Mosley v. WAM, Inc.*, 167 N.C. App. 594, 599, 606 S.E.2d 140, 143 (2004) (citation omitted).

In this case, the MSA clearly stated that Defendants reasonably denied Plaintiff's claim for compensation. That document was signed by both Plaintiff and Defendants. Therefore, the parties' signatures, alone, constituted competent evidence to support the Commission's conclusion that they entered into a binding, contractual agreement. *See generally Mosley*, 167 N.C. App. at 599, 606 S.E.2d at 143. The post-hearing statement made by counsel for Defendants could not change this fact.

*III. Fair and Just*

Plaintiff also contends that the Commission erred in determining that the terms of the MSA were fair and just and, thus, in enforcing the MSA against him. For support, Plaintiff asserts that the Commission erroneously (1) failed to establish whether Plaintiff's claim was contested or uncontested, (2) shifted to Plaintiff "the burden of proof as to the causal relationship between the recommended knee arthroplasty and Plaintiff's compensable knee injury," and (3) based its determination on information not available at the time of the settlement negotiations. We are unpersuaded.

Section 97-17(b) provides that the Commission shall not approve a settlement agreement unless the agreement is, *inter alia*, deemed "fair and just" by the Commission. N.C. Gen. Stat. § 97-17(b). Rule 502(a) also provides that "[o]nly those [compromise settlement] agreements deemed fair and just and in the best interest of all parties will be approved." 4 N.C. Admin. Code 10A.0502 (2012).

"Every compensation and compromise agreement between an employer and an injured employee must be determined by the Commission to be fair and just prior to its approval." *Lewis v. Craven Reg'l Med. Ctr.*, 134 N.C. App. 438, 441, 518 S.E.2d 1, 3 (1999), *affirmed*, 352 N.C. 668, 535 S.E.2d 33 (2000). In making that determination, the Commission must undertake a

> full investigation . . . in order to assure that the settlement is in accord with the intent and purpose of the [Workers' Compensation] Act that an injured employee receive the disability benefits to which he is entitled, and, particularly, that an employee qualifying for disability compensation under both sections 97-29 and -31 have the benefit of the more favorable remedy.

*Vernon v. Steven L. Mabe Builders*, 336 N.C. 425, 432–33, 444 S.E.2d 191, 195 (1994). Generally speaking,

> the fair and just determination is somewhat subjective in nature. Neither the statutory Workers' Compensation Act nor the Workers' Compensation Rules provide a specific procedure or guideline for deciding what is

> fair and just. While Rule 502 sets forth what must be contained in a compromise agreement, it does not specify how the Commission should go about its fair and just determination. The Commission must necessarily take into account the validity of the plaintiff's claim, despite the fact that the issue of compensability is not before it. In many instances, the amount of the settlement reached reflects how the parties perceive the viability of the plaintiff's claim. The Commission is not blind to this reality, but it must determine for itself whether the settlement is fair and just based on the evidence before it.

*Malloy v. Davis Mechanical Inc.*, __ N.C. App. __, __, 720 S.E.2d 739, 744 (2011). In determining whether the settlement agreement is fair and just, the Commission should consider the information available to the parties *at the time* of the settlement negotiations and take into account whether the plaintiff was represented by counsel. *See id.* at __, 720 S.E.2d at 743; *Kyle v. Holston Grp.*, 188 N.C. App. 686, 696, 656 S.E.2d 667, 674 (2008) (holding that the settlement agreement was unenforceable as not fair and just, in part because the plaintiff was "unrepresented and unaware at the time of settling his case that, under the law, he was entitled to the most favorable remedy available to him, including total disability benefits if he was totally disabled").

In addition to finding of fact 17, quoted above, the Commission made the following pertinent findings of fact regarding whether the settlement agreement was fair and just:

> 16. At the hearing before the Deputy Commissioner, Plaintiff, who was represented by counsel at the mediation on July 22, 2011, testified he did not remember reading or signing the [MSA] as a result of low blood sugar resulting from his diabetic condition. Plaintiff also testified that he did not notify his attorney that he was not feeling well at the time of the mediation and at no time requested to take a break. . . .
>
> . . .
>
> 18. Based upon a preponderance of the evidence of record, the . . . Commission finds that Plaintiff knowingly and willingly, and with counsel, entered into a binding contractual agreement at mediation to execute a [c]ompromise [s]ettlement [a]greement that would compromise and finally settle the workers' compensation claim related to his April 20, 2010 injury.
>
> 19. When viewed in light of the facts of the case at the time of the settlement, and based upon a preponderance of the evidence of record, the . . . Commission finds that the [CSA] that was drafted by Defendants and which Plaintiff refused to sign was fair and just and in the interests of all of the parties.

A. *The Commission's Duty to Consider the Contested or Uncontested Nature of Plaintiff's Claim*

Citing *Malloy*, Plaintiff first contends that the settlement agreement is not fair and just because the Commission made no determination regarding whether Plaintiff's claim was contested or uncontested on the issue of compensability. Plaintiff contends that this determination is "vital" to the Commission's decision because it impacts whether the Commission considers the fair and just issue in the light most favorable to Plaintiff. We are unpersuaded.

In *Malloy*, we stated in *obiter dictum* that we believed the Commission erred in reviewing the plaintiff's claim "in the most favorable manner" to the plaintiff because that claim was *contested* on the issue of compensability. *Malloy*, __ N.C. App. at __, 720 S.E.2d at 744. We reasoned that,

> [w]hen a claim is contested, . . . the plaintiff is not able to select the more favorable remedy. In that situation, the plaintiff is faced with the possibility of receiving no compensation if he or she proceeds to a hearing on compensability and does not prevail. The plaintiff must scrutinize the validity of his or her claim and determine if a settlement would be in his or her best interest.

*Id.* We also noted that the Commission should make its fair and just determination by considering the facts in a manner most favorable to the plaintiff only when the plaintiff's claim is *uncontested*. *Id.* In that circumstance, "the Commission is, *in a sense*, considering the plaintiff's claim in the most favorable

manner in order to ensure that the plaintiff is receiving the maximum remedy possible in an uncontested claim." *Id.* (emphasis added). This is because (1) the defendant has already admitted compensability and (2) the Commission must ensure that the plaintiff is treated fairly for essentially agreeing to waive the judicial process and accept compensation without those safeguards.

In this case, Plaintiff's claim was contested on multiple issues. Though the Commission did not label Plaintiff's claim as "contested" on the particular issue of compensability, it enforced the MSA, which stipulated that "Defendants have reasonably denied Plaintiff's claims for compensation," and described a number of "contested issues" in finding of fact 17 supporting Defendant's denial of those claims. For these reasons, Plaintiff's claim was not subject to the special consideration described in *Malloy*. Accordingly, we hold that the Commission's opinion and award sufficiently described Plaintiff's claim for the purposes of engaging in its fair and just decision-making process. Therefore, Plaintiff's first argument is overruled.

*B. Burden of Proof*

In his second argument regarding the Commission's fair and just determination, Plaintiff contends that the Commission

misapplied the law. Specifically, Plaintiff asserts that the Commission "incorrectly shift[ed] the burden of proof" as to the causal relationship between the knee surgery recommended by Dr. Seidel and Plaintiff's knee injury in its findings of fact 8 and 17, requiring Plaintiff to prove that future treatment is related to the workplace injury. Plaintiff contends that, in fact, "there is a presumption that Plaintiff's recommended additional medical treatment, including surgery, is related to his compensation [sic] knee injury, unless there is evidence offered to rebut such presumption and no such evidence was offered to rebut the presumption in this matter." We are unpersuaded.

Finding of fact 8 reads as follows:

> On May 18, 2010, Plaintiff again presented to Dr. Seidel who placed work restrictions on Plaintiff of no standing continuously for eight to ten hours with sitting twenty minutes every hour. Dr. Seidel noted the work restrictions would remain in effect for three weeks. Dr. Seidel noted that Plaintiff would have to seriously consider a knee arthroplasty; however, the . . . Commission finds that there is insufficient evidence to determine whether Dr. Seidel considered such surgery related to the Vietnam injury exclusively or due to an aggravation of the pre-existing condition as a result of the work injury.

Finding of fact 17, quoted above, lists as a "contested issue[]" whether the "potential future surgery" would be related to the work injury or the Vietnam injury.

Plaintiff's argument evidences a misunderstanding of the process the Commission must undertake when determining whether a settlement agreement is fair and just. This Court has stated that "[t]he Commission is required to . . . determine that a settlement agreement is fair and just in order to assure that the settlement is in accord with the intent and purpose of the [Workers' Compensation] Act that an injured employee receive the disability benefits to which he is entitled." *Kyle*, 188 N.C. App. at 695, 656 S.E.2d at 673 (citations and internal quotation marks omitted). While this process sometimes requires the Commission to take the validity of the plaintiff's claim into consideration, it does not impose the burden of engaging in a detailed analysis of the law as it applies to the facts of a particular claim.

Here, as Defendants point out, the Commission "was not determining whether future medical treatment was related to the original work injury. [It] recognized that the future medical treatment was a contested issue," which would have been in contention in a hearing. As a matter of procedure, such questions must be addressed in a separate hearing before the

deputy commissioner — not in an argument on appeal as to the enforceability of the parties' settlement agreement. Therefore, to the extent Plaintiff's argument has any substantive legal merit,[6] it does not support his larger contention that the settlement agreement is not fair and just. Accordingly, that argument is overruled.

### C. Information Available to the Parties at the Time of the Settlement Negotiation

Plaintiff also contends that the Commission erred in its fair and just determination because the information available to the parties at the time of the negotiation was contradictory. Specifically, Plaintiff points out that, while the MSA listed his claim as "denied," the Commission found that Plaintiff sustained "compensable injuries" and counsel for Defendants stated in a post-hearing contention that "Plaintiff sustained an admittedly compensable right knee injury on April 20, 2010." Plaintiff concludes that "the information available to the parties at the time of settlement is not consistent with the information used by the . . . Commission in its analysis as to whether or not the terms of the [MSA] are fair and just." We disagree.

Plaintiff's argument misapplies the facts and misapprehends the requirement that the fair and just determination take into

---

[6] We offer no opinion on whether it does.

account only the information known by the parties at the time of the settlement negotiations. *See Malloy*, __ N.C. App. at __, 720 S.E.2d at 743 ("[T]he Commission is required to evaluate the settlement or mediation agreement based strictly on the evidence available at the time the agreement was reached. To hold otherwise would potentially permit either party to avoid their contractual obligation should new circumstances arise prior to approval by the Commission."). First, Plaintiff's assertion that the Commission found he sustained compensable injuries to his right knee and right shoulder is incorrect. The Commission only found that "Plaintiff sustained a right knee and right shoulder injury at work . . . ." It properly declined to make any findings regarding the consequences of Plaintiff's injury as they relate to compensability. Second, even assuming that Defendants' post-hearing statements to the deputy commissioner regarding the compensability of Plaintiff's injury are relevant to the cited rule[7] or are contradictory, such comments were made *after* the settlement negotiations occurred and, thus, have no bearing on the Commission's fair and just determination as it pertains to the information available to the parties *at the time of the settlement negotiations*. Moreover, we reiterate that

---

[7] As the rule only requires the Commission to take into account the information available to the parties at the time of the settlement negotiations, we do not believe those statements are relevant.

while Defendants did not contest the occurrence of an on-the-job accident involving Plaintiff's right knee, they raised multiple issues as to the compensable consequences, if any, of that accident. Accordingly, Plaintiff's third argument is overruled.

*IV. The CSA*

Lastly, Plaintiff contends that the Commission is prevented from enforcing the CSA against him pursuant to Rule 502(c)(2) because it was not signed by the parties. This argument is without merit.

As discussed above, the CSA comprises the fully executed settlement agreement between the parties. Because the MSA was signed by the parties and is valid and enforceable, the signature requirement of Rule 502(c)(2) is satisfied. Accordingly, Plaintiff's final argument is overruled, and the Commission's opinion and award is

AFFIRMED.

Judges CALABRIA and ELMORE concur.

Report per Rule 30(e).